IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| In re: | ) In Proceedings under Chapter 7 |
| | ) |
| Stephanie R. Wise, | ) Case No. 10-32441 |
| | ) |
| Debtor. | ) |

**OPINION**

This matter comes before the Court on the United States Trustee's Motion to Dismiss Case under 11 U.S.C. § 707(b). This case presents two issues: first, whether the Court may consider the impending loss of child support payments when determining a debtor's disposable income in Chapter 7, and, second, whether the Court may consider future college tuition expenses in the same determination. For the reasons discussed below, the Court determines that it may not consider either, and the United States Trustee's motion is granted.

On September 22, 2010, the Debtor filed a voluntary Chapter 7 petition. The Debtor filed an Amended Form 22A Chapter 7 Statement of Current Monthly Income and Means Test Calculation ("Means Test"). Included in her Means Test are expenses for a student loan payment, tuition beyond the amount allowed on line 38, and tutoring expenses. A Notice of Presumed Abuse pursuant to 11 U.S.C. § 707(b)(2) was issued by the Clerk's office on October 21, 2010. The United States Trustee filed a statement of presumed abuse pursuant to 11 U.S.C. § 704(b)(1)(A) on November 19, 2010 and then filed the instant motion on December 20, 2010, pursuant to § 704(b)(2).

Section 707(b) states, in pertinent part,

(1) After notice and a hearing, the court, …on a motion by the United States trustee, …may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts…if it finds that the granting of relief would be an abuse of the provisions of this chapter. …

1

>   (2)(A)(i) In considering under paragraph (1) whether the granting of relief would be an abuse of the provisions of this chapter, the court shall presume abuse exists if the debtor's current monthly income reduced by the amounts determined under clauses (ii), (iii), and (iv),[1] and multiplied by 60 is not less than the lesser of –
>   >   (I) 25 percent of the debtor's nonpriority unsecured claims in the case, or $7,025, whichever is greater; or
>   >   (II) $11,725.

11 U.S.C. § 707(b) (footnote added).  Although awkwardly worded, § 707(b)(2)(A)(i) essentially calls for a mathematical calculation.  To determine whether a presumption of abuse arises, the debtor's disposable income is weighed against the least of three possible numbers.  If twenty-five percent of the debtor's non-priority unsecured claims ("claims") totals less than $7,025, then the debtor's disposable income is weighed against $7,025.  If twenty-five percent of claims exceeds $7,025 but is less than $11,725, then this number is the figure used.  Finally, if twenty-five percent of such claims exceeds $11,725, then the debtor's disposable income is weighed against $11,725.  Ultimately, the debtor's disposable income, when multiplied by 60, cannot be greater than or equal to the applicable figure or else abuse is presumed.

## **I. Facts**

In addressing whether a presumption of abuse arises, the Court must first determine the debtor's disposable income so that it may be multiplied by 60 and judged against the appropriate figure in § 707(b)(2)(A)(i).  The Means Test is the method used for determining a debtor's disposable income.  On the Debtor's Means Test, she reported current monthly income of $6,025.98 and deductions of $5,473.39, for a monthly disposable income total of $552.59.  When multiplied by 60, the Debtor's disposable income totals $33,155.40.

Once the debtor's disposable income has been determined, the Court must then establish the proper figure against which to judge this disposable income.  Here, the Debtor scheduled

---

[1] Sections 707(b)(2)(A)(ii), (iii), and (iv) allow for deductions from the debtor's current monthly income ("CMI") for certain allowed expenses.  CMI less these deductions produces a debtor's disposable income.

2

$25,181 in non-priority unsecured claims on her Schedule F. Thus, twenty-five percent of such claims is $6,295.25. As this number is less than $7,025, the Debtor's disposable income is weighed against $7,025. Since $33,155.40 is well above $7,025, the presumption of abuse arises.[2]

The Debtor may rebut the presumption under 11 U.S.C. § 707(b)(2)(B) by showing "special circumstances." The Debtor listed additional expense claims on her Means Test as follows: a student loan payment of $150; tuition totaling $594.16, which exceeds the amount allowed on line 38;[3] and tutoring expenses of $80. Should these expenses be allowed, the Debtor's disposable income becomes a negative $271.57.

The Debtor's offer of other special circumstances is at the heart of this controversy. In addition to the contention that the extra expense claims are reasonable, the Debtor argues that she will lose monthly child support payments in November 2011 and that this lost income should be considered in her CMI calculation. The Debtor suggests that her income will be reduced by an average of $979.16 per month without these payments. Subtracting the additional expense claims and the lost child support payments, as the Debtor contends, would decrease her disposable income by $1,803.32. Even after adding the amounts conceded by counsel, the Debtor's disposable income would become a negative $704.07 on the Means Test. The Debtor also put forth evidence at trial of her daughter's future college tuition expenses. It is not clear exactly how much of this expense the Debtor requests the Court to consider. Regardless of the amount, this would further reduce her already negative disposable income.

---

[2] The Debtor's CMI is actually higher than $33,155.40. Debtor's counsel concedes in the proposed Findings of Fact and Conclusions of Law that $113.33 in real estate taxes and insurance should be removed from the expense calculation. Further, no evidence was offered to contradict the United States Trustee's contention that approximately $433.33 should be included in income to account for the Debtor's regular over-withholding of income taxes. These adjustments add $546.66 to the Debtor's CMI.

[3] The Debtor testified that this tuition expense stems from private high schools for the Debtor's two children and does not include an amount the Debtor estimates for future college expenses for her daughter, as discussed below.

The United States Trustee calculates the Debtor's disposable income differently. The Trustee not only adds the amounts conceded by the Debtor, but he also asserts that the Debtor presented no evidence to substantiate a $42 deduction for additional food and clothing.[4] Thus, the Debtor's disposable income using figures suggested by the United States Trustee is $1,141.25 ($552.59 [original disposable income] + $546.66 [conceded by the Debtor] + $42). When multiplied by 60, the Debtor's disposable income becomes $68,475, or significantly greater than $7,025. The Trustee, although not conceding the student loan, tuition, and tutoring expenses, notes for the sake of argument that even if these are deducted from the Debtor's CMI, her disposable income still totals $317.09 per month, or $19,025.40 when multiplied by 60. The Trustee does not concede the loss of child support payments and future college tuition as special circumstances warranting a reduction of the Debtor's CMI.

## II. Analysis

*(A) Loss of Child Support Payments*

The Debtor presents no law in support of her contention that the loss of child support payments in November 2011 should be taken into consideration when calculating her CMI. The Supreme Court has permitted "known or virtually certain information about the debtor's future income or expenses" to be taken into account when determining a debtor's projected disposable income in Chapter 13. *Hamilton v. Lanning*, S. Ct. 2464, 2475 (2010). Moreover, 11 U.S.C. § 1325(b)(2) explicitly removes "child support payments…for a dependent child made in accordance with applicable nonbankruptcy law to the extent reasonably necessary to be expended for such child" from a debtor's disposable income calculation in a Chapter 13 plan.

---

[4] The United States Trustee also argues that the Debtor's charitable contribution deduction of $130 per month should be removed from the CMI calculation because the expense was not substantiated. 11 U.S.C. § 707(b)(1) disqualifies the court from considering charitable contributions when making a determination on the presumption of abuse. The Court need not find whether or not the Debtor's charitable contributions were substantiated, as her CMI ultimately exceeds the allowed amount in either event.

4

There is, however, no such corresponding provision for Chapter 7.  *See, e.g., In re Boyce*, 446 B.R. 447, 452 (D. Or. 2011).

A debtor's receipt of child support payments has been held by other courts to constitute income in Chapter 7.  *See, e.g., In re Steinberg*, 2010 Bankr. LEXIS 4001 (D. Wyo. October 8, 2010); *In re Forletta*, 397 B.R. 242, 243 (Bankr. E.D.N.Y. 2008); *In re Masella*, 373 B.R. 514, 521 (Bankr. N.D. Ohio 2007); *In re Castle*, 362 B.R. 846 (Bankr. N.D. Ohio 2006).  In *In re Castle*, the debtors argued that the conflicting provisions of § 707(b), where child support payments are not excluded from the disposable income calculation, and § 1325(b), where they are, cancel each other out, and "they should be given the benefit of the doubt, and hence be permitted to proceed with their Chapter 7 case." 362 B.R. at 850.  The court, in rejecting this argument, noted that Congress explicitly allowed the exclusion of child support payments from the disposable income calculation only in Chapter 13.  *Id.* at 851.  "Where 'Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.'" *Id.* (*quoting KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 543 U.S. 111, 118 (2004)).

> As the Debtors themselves point out, "there are public policy reasons involved with child support" (citation omitted).  But it does not also follow that for those debtors who receive child support, liquidation under Chapter 7 is preferable to staying under the protection of the Court in a Chapter 13.  Advantages, in terms of the family unit, potentially exist with proceeding under a Chapter 13.  To name just one, while in a Chapter 13 bankruptcy, debtors are not permitted to incur debt or dispose of assets outside the ordinary course. 11 U.S.C. §§ 363(b)(1), 364(b), 1303.  Hence, the behavior which originally lead [sic] to the debtor's financial problems may be partially alleviated,…thus benefitting the children…
>
> During the course of a Chapter 13, a debtor's plan may be modified, upon request by the trustee, to increase payments. 11 U.S.C. § 1329(a)(1).  To this end, child support payments are not of indefinite duration. Thus, were child support payments to terminate during the course of a chapter 13, funds would then be made available to pay unsecured

5

>   creditors. The same would also be true, if the debtor's income or expenses were to change favorably during this period of time.

*Id.* at 852.

As there is no six-month "look-back" period in a Chapter 7 (let alone a "forward-looking approach" that could be applied), and the Debtor was receiving the child support payments at the time of filing, these must be considered income in the calculation of the Debtor's disposable income. The purpose of the Means Test is to push debtors who are capable of paying their unsecured creditors into Chapter 13 as opposed to Chapter 7, where debtors are more readily able to discharge such debts. *See Ransom v. FIA Card Servs., N.A.*, 131 S. Ct. 716, 721 (2011). The Debtor filed her Chapter 7 petition on September 22, 2010. If the Debtor were placed in a Chapter 13 plan, her plan payments would have begun thirty days from that date. *See* 11 U.S.C. § 1326(a)(1). Thus, the Debtor would have been paying into a Chapter 13 plan for approximately thirteen months before her child support payments terminated.

*(B) Future College Tuition Expenses*

The Debtor also suggests that the Court should take into consideration her daughter's future college tuition expenses. Prior to the Bankruptcy Abuse Prevention and Consumer Protection Act ("BAPCPA") and the introduction of the Means Test, courts were endowed with discretion to consider the totality of a debtor's circumstances when the United States Trustee raised the issue of "substantial abuse." However, even under discretionary standards, courts have long held that creditors should not bear the burden of putting a debtor's adult child through college. *See, e.g., In re Goodson*, 130 B.R. 897, 902 (Bankr. N.D. Okla. 1991) ("A debtor does not have the right to force his creditors to donate to his children's education"). Nevertheless, BAPCPA adds an unexpected and unintended consequence. Now, because BAPCPA uses a mechanical calculation in determining whether a presumption of abuse arises, a debtor who

6

chooses to carefully live within her means in order to provide her children with a solid education may find it even more difficult to overcome the presumption of abuse. If her income exceeds the state's median income, and she cannot find enough qualified expenses to reduce her income calculation (as these costly educational expenses will not be part of the equation), the court has no leeway in allowing her to continue in a Chapter 7.

Although courts have, as previously noted, long held that a debtor cannot force creditors to pay for a child's education, this conclusion pre-BAPCPA always came accompanied by a debtor's abuse of other expenses, such as housing and transportation. Post-BAPCPA, the Court is left with virtually no discretion.[5] It is well established that "an adult child attending college is not a special circumstance that is out of the ordinary for an average family which leaves the Debtors no reasonable alternative but to incur this expense." *In re Patterson*, 392 B.R. 497, 506 (Bankr. S.D. Fla. 2008). *See also In re Saffrin*, 380 B.R. 191, 192 (Bankr. N.D. Ill. 2007); *In re Baker*, 400 B.R. 594, 598 (Bankr. N.D. Ohio 2009); *In re Walker*, 383 B.R. 830, 838 (Bankr. N.D. Ga. 2008). The unfortunate reality is that the Court has no choice but to dismiss any consideration of the Debtor's educational expenses for her children.

Against this harsh result lies the realistic hypothetical of a debtor who lives a more opulent lifestyle at the expense of affording her child the same educational opportunity (or who may not have a child at all). This hypothetical debtor may still fit within the confines of a Chapter 7, despite meeting or exceeding the local and national standards in housing or transportation, if she can squeeze enough qualified expenses out of said standards to fall outside

---

[5] The Court is confident that the United States Trustee does not want to be forced into taking a position inimical to such a debtor. In fact, the United States Trustee here states unequivocally that "it is clear that Debtor does not appear to have committed any of the bad acts or lived lavishly prior to filing and continu[es] to do so during her filing that might otherwise warrant dismissal for abuse." *See* United States Trustee's proposed Findings of Fact and Conclusions of Law, ¶ 28 (Doc. 37). The Trustee further stated at trial, "[The Debtor's] housing expense is very reasonable, very low."

the presumption of abuse. Here, the Debtor finds herself living in an impoverished community with poor schools. She keeps her house and car payments at a conservative amount to allow her to provide better schools for her children and a path out of poverty. While the Court is sympathetic to a debtor who sacrifices luxuries to pay for her child's education, it is, nonetheless, unfortunately bound to follow the law.

### III. Conclusion

As the Court can consider neither the Debtor's future educational expenses for her adult child nor the impending loss of child support payments, it is clear that the Debtor's disposable income falls well above the line needed to raise the presumption of abuse, even when allowing expenses for student loans, private high school tuition, and tutoring. The Debtor belongs in Chapter 13. Should she choose to file a plan under Chapter 13 after conversion or dismissal of this case, the Debtor is not without recourse if or when she stops receiving child support payments. Among the options are modification of her Chapter 13 plan under 11 U.S.C. §§ 1323 (prior to confirmation) or 1329 (after confirmation) and converting to Chapter 7 under 11 U.S.C. § 1307(a).

For the reasons stated above, the Trustee's motion is granted.

SEE ORDERED ENTERED THIS DATE.

ENTERED: May 27, 2011

/s/ Laura K. Grandy
UNITED STATES BANKRUPTCY JUDGE